UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

Case No. 15-20010-2

Honorable Nancy G. Edmunds

v.

LAMARC PEACOCK,

    Defendant/Petitioner.

_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE [114]**

Petitioner Lamarc Peacock filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. (ECF No. 114.) The United States filed a response. (ECF No. 120.) Petitioner's motion to extend time to file a reply was granted (ECF No. 122) on November 1, 2016, yet Petitioner did not file a reply. On January 29, 2019, the Court held an evidentiary hearing on Petitioner's assertion that, following the sentencing, he requested that his attorney file an appeal. Petitioner was represented by appointed counsel at the evidentiary hearing. The Court being sufficiently advised, it hereby DENIES Petitioner's motion to vacate, set aside or correct his sentence.

**I.    Background**

On June 15, 2015, Petitioner pleaded guilty to six of eight indicted counts pursuant to a Rule 11 plea agreement, including Hobbs Act robbery and use of a firearm during and in relation to a robbery. (Rule 11 Plea Agr., ECF No. 34; Tr. ECF No. 135.) The factual

basis for Petitioner's guilty plea is set forth in the Rule 11 agreement as follows:

> On or about December 20, 2014, Lamarc Peacock and two other individuals entered a Family Dollar store located in Detroit, Michigan. Defendant Peacock entered the store knowing his companion was armed with a pistol. Once inside the store, a member of the trio brandished a firearm and demanded money from the registers. Family Dollar employees turned over cash out of fear for their lives. Defendant Peacock and his companions fled with the cash and store items that were on the counter. Family Dollar is a national retail store which engages in business that affects interstate commerce.
>
> On or about December 26, 2014, Lamarc Peacock and two others entered a Dollar General store located in Detroit, Michigan. Defendant Peacock entered the store knowing his companion was armed with a pistol. Once inside the store, a member of the trio brandished a firearm and demanded money from the register. The Dollar Store clerks turned over the cash out of fear for their lives. Defendant Peacock collected the money and the trio ran from the store. Dollar General is a national retail store which engages in business that affects interstate commerce.
>
> On or about December 27, 2014, Lamarc Peacock and another individual entered a Family Dollar store located in Detroit, Michigan. Defendant Peacock knew his companion was armed with a pistol when they entered the business. Once inside the store, Peacock's companion held a cashier at gunpoint and demanded cash from the registers. The employees opened the cash registers out of fear for their lives. Peacock collected money from the registers while his companion held the workers at bay with a firearm. Defendant Peacock and the other individual fled from the store after stealing the cash. Family Dollar is a nationwide convenience store engaged in business that affects interstate commerce.
>
> On or about December 29, 2014, Lamarc Peacock and two other individuals entered a Dollar General store located in Dearborn, Michigan. Defendant Holmes was armed with a pistol when he entered the business. The trio shopped for items and placed it (sic) on the counter for the cashier. One of Peacock's companions brandished a firearm and announced a robbery. The cashier opened the cash register and backed away. Peacock and his companions took money, store property and fled the location. Dollar General is a national retailer which engages in business that affects interstate commerce.

(Rule 11 Plea Agr. 2-4, ECF No. 34.)

On August 6, 2015, the court received Petitioner's letter bearing the date July 31,

2015, in which he asked to withdraw his plea. (ECF No. 52.) Petitioner alleged that but for "his lawyer's bad advice" he would not have taken the plea. (ECF No. 52.) On September 15, 2015, the Court received a letter from Petitioner (bearing the date August 31, 2015) following up on his prior letter and again referencing the plea hearing and requesting another attorney. (ECF No. 69.) On September 16, 2015, the Court held a hearing on Petitioner's motion to withdraw plea and for appointment of new counsel. The Court denied Petitioner's request to withdraw plea and granted his request for new counsel. (Minute Entry Sept. 16, 2015; ECF No. 70.) Attorney Scharg was the third attorney appointed to Petitioner following his multiple requests for new counsel.

On January 28, 2016, the Court sentenced Petitioner to a total of 192 months: 24-month concurrent sentences on counts one, three, five and seven, and 84-month consecutive sentences on counts six and eight. (Judgment, ECF No. 101; Sentencing Hearing Tr. 17, ECF No. 119.) On August 19, 2016, Petitioner filed his motion to vacate sentence under 28 U.S.C. § 2255. (Pet'r's Mot., ECF No. 114.) The basis for Petitioner's motion is the argument that he received ineffective assistance of counsel because "[t]rial counsel failed to file a notice of appeal or to perfect a direct appeal" and "counsel failed to file a motion requesting leave of the court for withdrawal of petitioner's plea of guilty." (Def.'s Mot. Under 28 U.S.C. § 2255, ECF No. 114.)

## II. Standard

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

## III. Ineffective Assistance of Counsel

The *Strickland* analysis applies to claims of ineffective assistance of counsel. *Strickland* requires a petitioner to show: (1) counsel's performance was deficient by falling "below an objective standard of reasonableness" and (2) counsel's deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 688, 693-94 (1984).

The analysis is condensed when a defendant explicitly requests an appeal and the attorney fails to file one. Specifically:

> "[E]ven when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal."

*Campbell v. U.S.*, 686 F.3d 353, 360 (6th Cir. 2012). "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Id.* at 358 (citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). This holding also applies to a case in which a plea agreement waived "all or most of the defendant's rights on appeal." *Id.* at 358. Even within the narrow confines of the plea agreement, there remain "instances in which defendants seeking an appeal are still entitled to their day in court." *Id.* Despite the limited "prospect of success on the merits," "a defendant is entitled to counsel who will follow through on express instructions to proceed with an appeal, no matter what the ultimate odds of success." *Id.* at 360.

### A. Whether Petitioner Directed Counsel To File An Appeal

Petitioner "bears the burden to establish by a preponderance of the evidence that

4

he expressly requested that [his attorney] file a notice of appeal on his behalf and that [his attorney] failed to do so." *United States v. Brown*, 2017 WL 3022322, at *5 (E.D. Ky. July 17, 2017) (citations omitted); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) ("Pough must prove his allegation that his lawyers were constitutionally ineffective by a preponderance of the evidence.") (citing *McQueen v. United States*, 58 Fed. Appx. 73, 76 (6th Cir. 2003)).

In support of his argument that counsel failed to file a notice of appeal or perfect a direct appeal, Petitioner alleges that "[u]pon being informed by the district court judge, during the sentencing phase of my case, that I had a right to a direct appeal, I stated in open court that I wanted a direct appeal, moreover, that I wanted a notice of appeal to be filed on my behalf." (Def.'s Mot. Under 28 U.S.C. § 2255, ECF No. 114.) The Government correctly points out that the sentencing transcript does not show that Petitioner requested an appeal. The sentencing transcript evidences the following exchange between Petitioner's attorney and the Court regarding appeals:

> THE COURT: Mr. Peacock, you have the right -- I don't think you do have the right actually to appeal your sentence since it's well below the guideline range that you agreed to at the time that you entered your Rule 11. I believe that because you moved to set aside your motions you have the right to appeal that decision. Is that right, Ms. Brunson? I am not sure.
>
> MR. SCHARG [Petitioner's attorney]: I thought that was withdrawn.
>
> THE COURT: But to preserve your right, if you want to appeal that decision, it would have to be done within 14 days.
>
> MR. SCHARG: I believe when I was appointed on the case we withdrew the motions.
>
> THE COURT: Okay. So no right to appeal then if that was withdrawn. I wish you good luck. Thank you.

5

MR. SCHARG: Thank you.

(Sentencing Tr., 19-20, Jan. 28, 2016, ECF No. 119.)

The Sixth Circuit holds that because the resolution of the factual issue of whether a defendant has "affirmatively expressed to counsel his desire for an appeal" is pivotal to the defendant's claim for relief, "the district court must conduct an evidentiary hearing to determine if [the defendant] in fact expressed the desire for an appeal as he now asserts." *See Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012); and *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) ("In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'"). This Court held an evidentiary hearing on January 29, 2019, and heard testimony from Petitioner Peacock, his former attorney Henry Scharg, and Petitioner's mother, Asenath Denise Esters.

When questioned at the evidentiary hearing, Petitioner identified more instances in which he told his attorney to file an appeal. He testified that his attorney met with him once prior to sentencing and Petitioner indicated that he told his attorney about his interest in appealing his case. Petitioner alleges that the attorney did nothing regarding a notice for appeal. Petitioner also testified that when he was in the courtroom after the sentencing, he told the attorney he wanted him to file an appeal and the attorney told him he would file it. Finally, Petitioner testified that about two weeks after the sentencing he called the attorney to ask him about the appeal but the attorney acted like he did not remember him and Petitioner did not pursue it further.

Petitioner's mother also testified. The government argues that Petitioner was an adult at the time at issue, and relies on *United States v. Brown* to argue that a defendant must

6

show that he or she expressly instructed counsel to file the notice of appeal, not someone else. *United States v. Brown*, 2017 WL 3022322 (E.D. Ky. July 17, 2017) (According to the district court opinion adopting the magistrate judge's recommendation, the magistrate judge took testimony from the defendant and family members and concluded that neither the defendant nor the family members expressly directed the attorney to file a notice of appeal and that the actions of the family members did not equate to an actual instruction to appeal.). The issue remains whether Petitioner can show that he explicitly requested counsel file an appeal. The Court heard and considered Esters' testimony. Esters testified that she attended Petitioner's sentencing hearing, and afterwards she met with his attorney in the hallway without Petitioner present and that the attorney told her about the sentence and said he was going to appeal it. She also testified that she called the attorney twice after the sentencing, leaving a voice mail message only the first time, and never received a return call.

The Court took testimony from Petitioner's attorney for the sentencing. Scharg was Petitioner's third attorney and by the time Scharg was appointed, Petitioner had already plead guilty pursuant to a Rule 11 agreement. (ECF No. 34.) After meeting with Petitioner in anticipation of sentencing, Scharg filed a sentencing memorandum under seal with the Court. When asked whether at the time of these conversations, Petitioner had directed him to file an appeal, Scharg responded, "Not to my knowledge." He testified that his office files contain no letters or notes about conversations indicating that Petitioner wanted him to file a notice of appeal and he did not receive a letter or email from Petitioner directing him to file an appeal. Scharg testified that also he met with Petitioner in the lockup area of the courthouse prior to sentencing, and that his notes indicated that he also spoke with

7

Petitioner's family. Again when asked if Petitioner ever directed him to file an appeal on the day of sentencing, Scharg replied, "Not that I recall." Scharg testified that of the letters he received from Petitioner in July 2017 (a July 17, 2017 letter addressed to Scharg, to which was attached a June 2017 letter addressed to the Court) neither mentions an appeal, and both letters are about sending discovery. Scharg testified that while he does not have an independent recollection of speaking with Petitioner's family in the hallway after the sentencing hearing, his policy and procedure would have been to meet with the family, if they were present at the sentencing, to discuss what had occurred and what to expect.

The Court also considers five letters to the Court from Petitioner docketed between August 6, 2015, and June 27, 2016; in none of the letters did Petitioner mention an appeal. He testified in part that he did not mention it in the earlier letters because he had not been sentenced yet. The first of the post-sentencing letters was dated June 9, 2016, referenced "the 'Johnson Case,'" and made no mention of an appeal. (Peacock Letter June 27, 2016, ECF No. 105.) The Court finds it persuasive that Petitioner corresponded with the Court and/or Scharg following sentencing and did not mention an appeal. To date, Petitioner has not been reluctant to raise issues related to his case via letters to the Court, yet aside from Petitioner's actual § 2255 motion, his post-sentencing correspondence does not mention a request for an appeal nor a prospective appeal. There is no mention of an appeal, or that he requested an appeal, in written correspondence following the plea or sentencing. Further, as set forth above, there was a discussion on the record at the end of sentencing regarding whether a limited right of appeal remained and yet there was no indication that an appeal was requested or going to be taken. The Court also considers the length of time it took Petitioner to file his pro se § 2255 motion in which he made the allegation that he

requested an appeal. It was filed nearly seven months after his sentencing and the judgment was entered. The Court finds that Petitioner has not met his burden to show that he expressly requested his attorney file an appeal.

**B. Whether Counsel Had A Duty To Consult With Petitioner About Filing An Appeal**

It is not enough to stop the analysis at a finding that Petitioner did not expressly direct counsel to file an appeal.

The Supreme Court has held that

> Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

Scharg testified that he did not speak specifically with Petitioner about whether or not he should appeal his sentence. When explaining that he did not speak with Petitioner about appealing his sentence, Scharg pointed out that he would not have encouraged Petitioner to appeal the sentence because it was very fair, where Petitioner's exposure on the four § 924 counts was approximately 82 years and the guidelines on the other charges were somewhere between 50 and 60 months. (ECF Nos. 23, 33.) Further, Petitioner's Rule 11 agreement contained a waiver of appeal unless his sentence exceeded the top of the guideline range, which was 447-462 months. (Rule 11 Plea Agreement ¶ 2B, ECF No. 34.) Petitioner was sentenced to 192 months, well under the guideline range. Petitioner "received the sentence bargained for as part of the plea." *Roe v. Flores-Ortega*, 528 U.S. at 480. There would be no reason to believe that a rational defendant would want to appeal.

9

The Court also finds that the evidence found credible does not support that Petitioner reasonably demonstrated to Scharg that he was interested in appealing. Despite having put pen to paper to raise other issues with both the Court and his attorney, Petitioner never mentioned the appeal in written correspondence following the sentencing. With respect to the issue of withdrawing the plea, that had been heard and decided by the Court. (Tr., ECF No. 137.) Scharg testified that he would not have recommended appealing the sentence, in light of the variance given on the counts. Given these factors and the potential sentence Petitioner faced if he went to trial, the Court finds Scharg's performance was not deficient. Petitioner has failed to show that Scharg provided deficient counsel on this issue.

**C. Whether Counsel Was Ineffective In Failing To File A Motion To Withdraw Plea**

Finally, Petitioner argues that "counsel failed to file a motion requesting leave of the court for withdrawal of petitioner's plea of guilty." (ECF No. 114.) This is further identified in Petitioner's motion for an order granting Petitioner's request for certified copies of documents as a "claim of ineffective assistance of counsel regarding petitioner's acceptance of the plea agreement." (ECF No. 118 at 3.) The Court did not hold a hearing on this issue, as the record supports a finding that Petitioner is not entitled to relief on this issue.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citations omitted). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id.* "In context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. The Supreme

Court noted that in a prior case, "when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 162-62 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Petitioner does not elaborate on his claim that "counsel failed to file a motion requesting leave of the court for withdrawal of petitioner's plea of guilty." (ECF No. 114 at 4.) Petitioner does not make any allegation as to how counsel's performance during the plea process was not within the standards of competence "demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 56. Petitioner appeared at the plea hearing and was questioned extensively by the judge regarding whether he had consulted with his attorney and was satisfied with her advice:

> The Court: Do I understand, Mr. Peacock, that you have had an opportunity to discuss this matter further with Ms. Webster, and that you've decided to continue with her as your counsel and to enter a plea of guilty in this matter?
>
> The Defendant: Yes, ma'am.
>
> The Court: Are you satisfied that you had a full and complete, frank discussion with Ms. Webster about the up side and the down side of pleading guilty in this matter?
>
> The Defendant: Yes, ma'am.
>
> The Court: And it's your understanding that you could request new counsel, if you wish, and go forward to trial if that's what you want? There's nothing compelling you to plead guilty in this matter, you understand that?

11

The Defendant: Yes, ma'am.

The Court: And that's your choice? You want to stick with Ms. Webster and enter a plea of guilty?

The Defendant: Yes, ma'am.
. . .

The Court: You have your attorney, Ms. Webster, beside you in court today, and I asked you previously, but I'm going to ask you again, have you discussed this matter with her?

The Defendant: Yes.

The Court: Completely and fully to your satisfaction?

The Defendant: Yes.

The Court: Did she explain to you kind of all the potential down side and up side of entering into this Rule 11 Plea Agreement?

The Defendant: Yes.

The Court: And you're satisfied with her advice and with the legal services that she's performed on your behalf?

The Defendant: Yes.

The Court: Do you understand that you have the right to plead not guilty to every charge filed against you?

The Defendant: Yes.

The Court: Do you understand that if you were to plead not guilty and go to trial that you would be protected by a number of rights set forth in the constitution of the United States?

The Defendant: Yes.

The Court: I'm going to go over those rights with you. . . .

(Tr. Motion for Withdrawal of Counsel and Plea Hearing, June 15, 2015, at 7, 12-13, ECF No. 135.) Petitioner entered a plea of guilty to charges 1, 3, 5, 6, 7, and 8. (*Id.* at 9, 15, 19-

21.) Petitioner agreed on the record that he had signed the Rule 11 Agreement. (*Id.* at 21.) Petitioner was advised at the hearing that pursuant to the Rule 11 Agreement and the agreed-upon guideline, he faced a "combined mandatory minimum sentence of 32 years." (*Id.* at 21.) At the plea hearing Petitioner was asked whether anyone had made any other promises or assurances to him or tried to force him to plead guilty by any mistreatment, pressure or threats of any kind, to which he responded "No." (*Id.* at 23.) He agreed that he was pleading guilty freely and voluntarily because he was guilty and it was his choice to plead guilty. (*Id.* at 23-24.) The Court accepted Petitioner's plea. He was sentenced well below the guidelines set forth in the Rule 11 agreement and his plea represented a voluntary, informed choice. Petitioner has not shown that his plea counsel's advice fell below an objective standard of reasonableness.

Petitioner submitted two letters to the Court, docketed August 6, 2015, and September 15, 2015, regarding his plea. (ECF Nos. 52, 69.) The Court treated the first letter as a motion to withdraw plea. On September 16, 2015, the Court heard Petitioner's August 6, 2015 motion to withdraw his plea and considered issues raised in both letters.[1] The Court denied Petitioner's motion to withdraw the plea and granted his motion for new

---

[1] In the first letter, Petitioner wrote that he would not have taken the plea if his attorney had not "trick(ed)" him into taking the plea (ECF 52). In the second letter, he alleged a misunderstanding of the sentencing range, alleging that "in Court it was explained that the minimum mandatory was seven years" yet in his "paperwork" it was 32 years. (ECF No. 69.) He asked that this be clarified prior to sentencing and that he be appointed a new attorney. At the hearing, Petitioner's testimony was that his attorney talked him into the plea, telling him that if he didn't plead, he could go to prison for a long time, and it was a gamble. The Court noted that at the plea hearing he was given additional time to discuss it and was asked a lot of questions about the voluntariness of his plea. It was also pointed out at the September 16 hearing that the mandatory minimums had been included in the Rule 11 agreement and acknowledged by Petitioner. (Sept. 16, 2015 Hearing Tr. 8, ECF No. 137.)

counsel.

In his 2255 motion Petitioner alleges only that counsel failed to file a motion to withdraw the plea, and does not identify any error of counsel in advice related to the plea or plea process. To the extent that Petitioner's argument is that counsel failed to file a motion to withdraw his plea, the Court had already denied the same and there is no allegation that Petitioner directed counsel to file such a motion. Petitioner's counsel is not required to raise frivolous arguments. See *Krist v. Foltz,* 804 F.2d 944, 946-47 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist.").

As to the second element of the *Strickland* analysis, the "prejudice" requirement, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill*, 474 U.S. at 57. "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "[R]equiring a showing of 'prejudice' from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of guilty pleas . . . ." *Id.* at 58 (citation omitted). Because Petitioner has not shown that his attorneys' counsel was deficient, the Court need not reach the issue of prejudice. It is worth noting, however, that Petitioner does not allege prejudice in his § 2255 motion.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22(b) provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253(c). Rule 11 of the

Rules Governing Section 2255 Proceedings requires that a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted).

For the reasons stated in this opinion, the Court will deny Defendant a certificate of appealability because he has failed to make a substantial showing that his due process rights were compromised.

### V.     Conclusion

Petitioner has failed to show that counsels' representation fell below an objective standard of reasonableness. For the reasons set forth herein, the Court denies Petitioner's motion under 28 U.S.C. § 2255.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 27, 2019

I hereby certify that a copy of the foregoing document was served upon parties and counsel of record on March 27, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager